# Stahl *v.* Press Publishing Co., Appellant.

· *Practice, C. P.—Trials—Subpœna duces tecum—Subpœna issued by court on own motion.*

1. In an action against a newspaper to recover damages for the publication of a libel, the trial judge did not err in directing on his own motion the issuance of a subpœna to compel the appearance of an officer of the defendant company for the purpose of proving its publication of the paper containing the alleged libel, especially where such action was taken not only without objection from counsel for defendant but really at their suggestion.

*Libel—Publication in newspaper—Proof of publication—Measure of damages—Punitive damages.*

2. In an action against a newspaper to recover damages for the publication of an alleged libel the defendant cannot raise the question as to the sufficiency of proof of publication where sufficient proof is found in the testimony of its own witnesses.

3. Where in an action against a newspaper to recover damages for the publication of a libel it appeared that on the hearing of an adultery charge before an alderman the name of the plaintiff was mentioned in connection with the alleged adultery, and in publishing an account of the hearing the defendant erroneously stated that the plaintiff was the defendant in the adultery case and was held for court, the court did not err in leaving to the jury the question as to whether punitive damages should be awarded.

Argued Oct. 15, 1914. Appeal, No. 117, Oct. T., 1914, by defendant, from judgment of C. P., Allegheny Co., Oct. T., 1912, No. 747, on judgment for plaintiff in case of Mabel D. Stahl v. Press Publishing Company. Before BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass for libel.    Before MACFARLANE, J.

The court charged the jury as follows:

The plaintiff, Mabel D. Stahl, has brought suit against the Press Publishing Company, claiming that it published a libelous article in relation to her in an issue of the Pittsburgh Press of Sunday, March 24, 1912. The first question for you is did the Press Publishing Company publish the paper a part of which has been introduced in evidence here, being the part of a paper which Mr. Blair says he got at an office down on Fifth Avenue which he said was the office of the Press. When a paper is offered in evidence as against a defendant, the defendant is entitled to have the whole paper. That is the ordinary rule of evidence. It is fair and proper. In this case Mr. Blair testified that he left behind him, he did not take from the counter—I do not know how he put it— anything except this paper Exhibit No. 1; that there was more of that particular edition which he did not bring here. I admitted this piece of paper in view of certain other testimony. In view of the fact that there

was no admission that this particular paper was published the testimony of Mr. Blair is for you, and it is for you to say whether that is true, because it is not the whole paper. There was testimony that there was a file of newspapers in the possession of the defendant. There had been no notice to produce it, and a subpœna was given to an officer to be served, but the only person who was served, was the assistant manager of circulation, who said that he had not the custody of these papers. Now, if it is true that the defendant had files covering this period and covering the issue of the paper of March 24, 1912, that is a circumstance for your consideration, and one which I took into consideration in admitting this paper. If none of that is true you should not render a verdict for the plaintiff, but if it is true and it was not satisfactory to the defendant to have only a part of the paper and it wanted the rest of it, it could produce it. If Mr. Blair's statement is true, that is sufficient evidence not only of the publication of this paper—meaning the paper I hold in my hand here—but it is sufficient evidence that it was published on the 24th of March, 1912, as a Sunday edition. Was it published by the Press Publishing Company? There was some testimony on that subject. If you fairly find from the weight of the evidence that the Press Publishing Company issued this paper, you then proceed with the rest of the case. If the Press Publishing Company did not issue it, it is of course your duty to render a verdict for the defendant. If you find that the plaintiff's claim has been substantiated on that point, remembering that the burden of proof is on the plaintiff, then you will take up the question of the libel. It is scarcely necessary for me to define what a libel is. I need only say that a printed article which says that a woman, designating her, was held for court on the charge of infidelity and that she gave bond for court and that there was a hearing is a libel. This article is a libel, and it is a libel which needs no testimony of special damages. It is admitted here

that she was not held for court; it is admitted that there was no charge made against her in the shape of an information or anything of that kind; that it was against some one else; and it is admitted here that she was not guilty of adultery. That has been stated over and over in the argument of counsel to you. So that you have on the face of it an article here which is a libel; and a libel entitles the person libeled to damages unless there is a defense. One defense is the truth. That is what is called justification. The defendant filed a plea of not guilty and justification. Under the plea of not guilty. it was competent to show if possible that that is what is called a privileged publication. Certain things can be published. My conduct as a judge can be published, that is a privileged publication. The conduct of the jury in the box and in the case, what is done, even if that would cast discredit on the jury, if it is the truth is privileged. There is nothing of that kind here. This was not a case in the alderman's office against Mrs. Stahl, so there is no question of privileges. It would not be necessary to refer to this if it had not been argued quite at length by counsel. Neither is the defense of justification made out, because it is beyond any question not true that she was charged and held for court, or that these things transpired that are stated here in any case against her. In other words, gentlemen, it is not worth while to go into any dissertation upon the law. The way in which this case stands it is a libel entitling the plaintiff to damages, if you think she has been damaged, if you find from the evidence here that she has been damaged. Because the defenses are such as in law do not take away the liability of the defendant, assuming that you find that this is the issue of the Press of Sunday, March 24, 1912, and that the Press Publishing Company published it. For an injury to one's reputation the rule is compensation. That is, such reasonable amount as the jury would find would fairly compensate the plaintiff for the injury to reputation and to feelings. In such

a case it is proper to consider who the person is, what her situation in life is. You should consider her appearance and manner in arriving at what she is. Remember that so far as I have gone it is not a question of punishment, it is a question of compensation. But there is in this case testimony as to the way in which this thing happened, and that is to be considered in what we call mitigation of damages. If this story was made out of the "whole cloth" and there was absolutely no truth in it, no reason for it, no excuse for it, it would be a much worse case than where there is some reason for it. We permitted testimony here as to what did transpire at the office of Alderman Fugassi: that there was a case there in which a charge was made against Smith, and that that charge was that he had committed adultery with Mrs. Stahl, as to what the reporter did, and various things of that kind. That was not a defense to the libel itself. It does not take away the liability of the defendant if the defendant is liable, but it comes in on the question of damages; particularly also on the question of whether there is any punitive damages, and if so how much. I have told you that this was a libel entitling the plaintiff, in the absence of a legal, valid defense, to damages. Because when an article makes a charge such as this and it is not true, the law implies malice. If there is actual malice the jury may in special cases, in addition to compensation give what is called punitive damages; that is, damages to punish a defendant for conduct which the jury would find was reckless and outrageous—that it had gone so far beyond the bounds of legal right that it should be punished, not only as a warning to the defendant but as a warning to others. To determine whether there was actual malice, you take the situation here that the defendant and the defendant's reporter and city editor have stated—and I assume that there cannot be much question about that—that they did not know this woman. It would appear that they had no particular spite against her, but the

manner in which an article is written and appears is evidence for the jury as to whether there is malice. That is, more than a reckless disregard of the rights of the plaintiff, which is legal malice, but a special holding her out to contempt and ridicule, the style in which it is done. Now I do not mean by that the mere fact that there are headlines, the mere fact that it is "dressed up," and perhaps, that we would say that we do not approve of that kind of writing. That is not it. But if it has gone outside of the information which was obtained from the magistrate's office and published things which do not have a direct bearing upon that—and I am referring specially to this interview with Mr. Price, and to the way in which some of these questions were asked—I am not saying that they show actual malice nor am I saying that they justify punitive damages, but I am calling your attention to them simply because that is part of the article and are some of the things which you may give attention to in disposing of that matter. If you find this is a proper case for punitive damages, you may add to compensation such amount as you think is proper, within reasonable bounds, of course. Upon that question of damages, this article refers to walks taken by Mrs. Stahl with W. L. Smith. There is a good deal about that, and you will remember that she was asked if she did go with him at a certain time and she said no. But I may be wrong in this, and simply call your attention to it. My impression is that she did not deny that she had been with Mr. Smith—I do not mean in any improper way—but she spoke of how she became acquainted with him and then that she had been with him. I do not remember that she made a positive denial of being with him on the Verona car line. Further, there was testimony introduced on the part of the defendant of her being out there. Mr. Coble testified that he had seen her in the woods with Smith. You have also the testimony of Mr. and Mrs. Haywood that she had admitted having been with Mr. Smith at various places, and the

plaintiff did not go on the stand to rebut that. When you are considering the damage to a person charged with things that are not true, if that person is absolutely innocent of anything that is suggested, the damage would be a great deal more than if there is some ground for it. And you are to consider the plaintiff's own conduct, if you find that she was doing those things, in your estimate of what would be fair compensation to her as well as in your estimate of what would be the amount that you would give as punitive damages, if you give such. The plaintiff has asked me to charge you on several things, and I do not know whether Mr. Thompson now wishes me to affirm them, because I have practically disposed of the question of privilege and some other matters.

Verdict for plaintiff for $2,100 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were various rulings of the trial judge, various instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*George J. Campbell,* with him *Walter S. Lobingier,* for appellant.

*Robert E. Anderson,* of *Blair and Anderson,* with him *Thomson and Thomson,* for appellee.

Per Curiam, January 2, 1915:

The first of the four questions in the statement of those involved in this appeal relates to the action of the trial judge in directing, of his own motion, that a subpœna duces tecum be issued to compel the appearance of an officer of the defendant company for the purpose of proving its publication of the paper containing the alleged libel. This action of the court was taken not only without objection from counsel for defendant, but really at

their suggestion, as appears by the record, and we cannot, therefore, now hear them in complaint of it. Without regard to their acquiescence in it, the learned trial judge committed no error and was guilty of no impropriety in directing the subpœna to issue, if he felt it was necessary for the establishment of a material fact in the case. The strictures upon him appearing in appellant's paper book are regrettable.

As to the second and third questions it is sufficient to say that, if the plaintiff failed to prove the publication of the libel, such proof was found in the testimony of the witnesses called by the defendant. The answer to the fourth question is that we find nothing in the rulings of the court or in the charge which calls for a reversal on the ground that the jury were permitted to and did fix an improper measure of damages.

Assignments of error overruled and judgment affirmed.